No. 3240

Second Circuit

———

FRANCIS v. NOBLE
AMERICAN CREOSOTE WORKS, INC.,
Intervenor

———

(June 28, 1928. Opinion and Decree.)

———

(*Syllabus by the Court*)

1. **Louisiana Digest—Privilege—Par. 7.**

The privilege in favor of laborers for wages earned in making cross ties is lost when the laborers knowingly permit the ties to be removed from the premises where made and to be stacked, sold and delivered elsewhere to a bona fide purchaser.

> Union S. & F. Co. vs. J. Supple's Sons P. Co., 139 La. 692, 71 So. 949. Roger vs. Milliken & Farwell, 150 La. 657, 91 So. 143.

2. **Louisiana Digest—Privilege—Par. 7.**

The privilege of laborers on cross ties for wages earned in making them is lost where they allow the ties to be mingled with other ties on which they have no privilege so that the ties on which they have a privilege cannot be distinguished from those on which they have not.

> H. & C. Newman vs. Cannon, 43 La. Ann. 712, 9 So. 439.

Appeal from the Eighth Judicial District Court, Parish of LaSalle. Hon. F. E. Jones, Judge.

Action by Martin Francis against James P. Noble. American Creosote Works, Inc., intervenor.

There was judgment for plaintiff and intervenor appealed.

Judgment reversed.

A. D. Flowers, of Jena, attorney for plaintiff, appellee.

Moss and Moss, of Winnfield, attorneys for intervenor, appellant.

STATEMENT OF THE CASE

REYNOLDS, J. The plaintiff, Martin Francis, sued the defendant, James P. Noble, to recover the sum of $711.46, for wages earned by himself and by other laborers who had assigned their claims to him, in making 12,197 cross-ties, of which amount $120.00 was earned by himself and $591.46 by his assignors.

Plaintiff alleged that he was entitled under the law—

"to have a writ of provisional seizure issue * * * directing the sheriff * * * to provisionally seize and hold the property, rights and credits of the said James P. Noble, and specially all cross ties belonging to or in the possession of said J. P. Noble within the jurisdiction of this court, pending further orders of this court."

In his prayer he asked that the sheriff—

"provisionally seize and safely hold pending further orders of this court, the property, rights and credits of the said James P. Noble, and specially all cross-ties located on the 'Y' of the L. & A. Railroad Company belonging to or in the possession of or manufactured by the said James P. Noble."

A writ of provisional seizure was issued and under it the 12,197 ties in controversy were seized.

Defendant James P. Noble filed an answer admitting the correctness of plaintiff's claim and consenting that judgment might be rendered against him as prayed for.

The American Creosote Works, Inc., filed an intervention and third opposition, claim-

ing to be the owner of the ties seized, and that—

"James P. Noble, defendant in this suit, sold and delivered to your petitioners said cross ties on the day and dates as follows, to-wit:

| | | |
|---|---|---|
| March | 15th, 1927 | 1180 |
| March | 23rd, 1927 | 1011 |
| March | 31st, 1927 | 707 |
| April | 11th, 1927 | 1296 |
| April | 18th, 1927 | 1101 |
| April | 25th, 1927 | 1139 |
| May | 4th, 1927 | 744 |
| May | 11th, 1927 | 1174 |
| May | 26th, 1927 | 1857 |
| May | 31st, 1927 | 398 |
| June | 7th, 1927 | 788 |
| June | 17th, 1927 | 1172 |
| July | 1st, 1927 | 1323 |
| Total | | 14890 |

"That your petitioner shipped two thousand six hundred ninety-three (2693) of said cross ties, leaving twelve thousand one hundred ninety-seven (12,197) on the side-track of the L. & A. Railroad Company on what is known as the 'Y' in the town of Jena, Louisiana; that your petitioner paid the said James P. Noble for said cross-ties and stamped them with the American Creosote Works brand or mark, and had no notice that there were any labor claims on said cross-ties; and that more than thirty days has elapsed since the last of said cross-ties had been purchased; and that plaintiff has no lien or privilege on the same."

And it prayed that plaintiff be decreed not to have any privilege on the cross-ties seized and that they be released from the seizure and that its right to claim damages of plaintiff as for illegal seizure be reserved to it.

Answering the petition of intervention and third opposition the plaintiff denied that the ties seized were not the property of J. P. Noble or that they were not subject to seizure for his debts and denied that the ties had been delivered by him to intervenor, third opponent.

He further answered that—

"Defendant admits that J. P. Noble entered into a contract for the sale of certain cross-ties to the said American Creosote Works, Inc., but shows that the said sale was not perfected and could not be perfected until delivery of the said ties as per terms of the contract. That no such delivery was made of the ties provisionally seized, and that for this cause the ties were at the time of the seizure the property of J. P. Noble and subject to the labor liens existing against the said ties as set forth in the original petition of Martin Francis, one of the defendants in this intervention.

"Further answering * * * your defendant shows that he is without information as to the number of ties that had been shipped by the said J. P. Noble to the intervenor, and that defendant in intervention has no interest in any ties other than the 12197 on the side track of the L. & A. R. R. Company on what is known as the 'Y' in the town of Jena, Louisiana, but shows that the ties on the said side-track were the property of J. P. Noble and subject to labor claims due by the said J. P. Noble in the manufacture of said ties."

And he prayed that intervenor third opponent's demands be rejected and its petition dismissed at its cost.

On these issues the case was tried and there was judgment in favor of the plaintiff, Martin Francis, and against the defendant, James P. Noble, for the sum of $711.46 with legal interest thereon from August 25, 1927, sustaining the writ of provisional seizure and recognizing the privilege asserted thereon by the plaintiff and ordering the seized cross-ties sold for the satisfaction of the judgment, and rejecting the demands of the intervenor third opponent, American Creosote Works, Inc., and dismissing its intervention third opposition.

It was further adjudged that the defendant, J. P. Noble, be taxed with the costs of the main suit and that the costs

of the intervention third opposition be paid by the American Creosote Works, Inc.

Intervenor third opponent appealed.

## OPINION

If plaintiff's right to the asserted privilege is to be determined under Act No. 195 of 1912, it cannot be sustained, for the reason that that act grants the laborer a privilege only on the cross-ties he has made or assisted in making, and there is no evidence in the record tending to show that plaintiff or his assignors performed any labor toward making the particular ties seized that has not been paid for.

The ties were manufactured at a saw mill operated by J. P. Noble at Jena, Louisiana, from timber cut and hauled from land some distance away, and the thirteen laborers whose claims for wages make up the amount sued for were employed in operating the mill. The timber was sawn into ties and the sidings of the logs were converted into lumber. It thus appears that no one man made any one or more of the ties, but that all employees engaged in operating the mill assisted in the making of all of the ties. The labor for the price of which plaintiff asserts a privilege was performed by the employees between February 8, 1927, and July 15, 1927, and during this time the laborers were paid various amounts on account of the wages earned by them during that space of time. The lot of ties seized originally formed part of a larger lot of 14,890 that had been reduced by sales. There is no way of telling what part of the wages sued for was earned in the manufacture of the 12,197 ties seized or any of them. The wages owing to the laborers were for services rendered in assisting in operating a saw mill at which lumber as well as cross-ties were manufactured. The privilege securing the payment of wages for such services is that conferred by Act 23 of 1912. The labor to secure the payment of whose wages Act 195 of 1912 grants a privilege is that of "tie-hackers" who with broadax, saw and other tools fell timber and convert it into ties. It is not contended by plaintiff that he or his assignors performed labor of this latter kind or that the asserted priviledge exists in virtue of the performance by him or his assignors of work of this kind.

If plaintiff has a privilege it must be in virtue of Act No. 23 of 1912, and that it is the privilege conferred by this act he is claiming appears from his petition, for he alleges therein—

"That the said labor performed by your petitioner and the other laborers from whom petitioner acquired their claims, was done and performed for the said James P. Noble at a certain saw mill or tie mill located near the town of Jena, Louisiana, on what is known as the 'Heard Place' and that the said James P. Noble placed the products of the said mill, which consisted of cross ties, on the side track of the L. & A. Railroad Company, on what is known as the 'Y' within the town of Jena, Louisiana."

And—

"That by virtue of the labor done and performed by petitioner and by virtue of special subrogation of the rights, liens and privileges of the other laborers, your petitioner has a lien and privilege on the products of said mill, which consists of cross ties, as above set forth."

But Act No. 23 of 1912 specially provides that the lien or privilege it grants—

"shall have no effect against bona fide purchasers of the said material, without previous notice."

The evidence in the case conclusively shows that the ties in controversy had been sold to intervenor third opponent before they were seized, and without notice of the laborers' claims.

James P. Noble testified:

"Q. Mr. Noble, when the ties were stacked on the L. & A. 'Y' were they inspected by the American Creosote Works?

"A. Yes, sir.

"Q. Branded with their brand?

"A. Yes, sir.

\*    \*    \*    \*

"Q. Mr. Noble, please state whether or not intervenor's exhibits numbered 1 to 13, inclusive, are checks in payment for ties stacked on the 'Y' and cut by your mill?

"A. It is part payment; 5 cents on the tie held back.

"Q. Mr. Noble, state whether or not these checks are in payment for ties seized in this writ of provisional seizure?

"A. Part payment of the ties in the seizure."

M. C. Miller testified:

"Q. Now, Mr. Miller, just state what this 'Ramp inspection final by A. C. W. inspector'?

"A. That means that the inspection is final and the ties paid for.

"Q. This is your regular printed form of contract. You put in this contract that you will accept the ties where put on the railroad track and pay for them there?

"A. Yes, sir.

"Q. Did you accept them on the railroad and pay for them?

"A. We did, with the exception of the loading charge.

"Q. I hand you documents marked intervenor's exhibits 1 to 13, inclusive, and will ask you to state whether or not that is full payment for inspection of ties that were on the yard were made and if that is full settlement in full?

"A. That is settlement in full for the inspection on the yard less the loading charge which was to be borne by the purchaser or seller. In other words, if the seller wants to load those ties at that price he may do so, and if not, we load them ourselves and reserve that for that charge.

"Q. Were those ties delivered to you from the mill to the L. & A. track by Mr. Noble?

"A. Yes, sir. Our inspection report shows that our inspector took them up and I paid according to those reports.

"Q. You inspected the ties on the different dates as shown by the inspections and gave Mr. Noble a check in full for each inspection, less the loading charges agreed upon?

"A. We did.

"Q. Did Mr. Noble load any of those ties?

"A. He loaded about five cars.

"Q. You paid him the additional five cents per tie for loading those five cars?

"A. Yes, sir."

The only question in the case is, as stated by counsel for plaintiff, appellee, in his brief—

"whether or not the defendant, Noble, was in possession of the ties"—
when they were seized.

And he contends that they were for the reason that they were sold f. o. b. cars and when seized had not yet been loaded, and that therefore—

"until the ties were delivered in the cars they were still in the possession of and the property of James P. Noble."

We think otherwise.

"Tradation or delivery of movable effects takes place \* \* \* even by the bare consent of the parties, if the things cannot be transported at the time of sale, \* \* \* ."

Civil Code, Art. 2478.

It is stipulated in the contract between the American Creosote Works, Inc., and James P. Noble that—

"Delivery to start at once and be completed within 90 days from date of this order. Ramp inspection final by A. C. W. inspector."

The ties were ramped on the right-of-way of the carrier and there inspected and accepted by the purchaser's inspector and branded with the mark or brand of the purchaser to signify such acceptance. This, we think, constituted delivery, and thereafter the ties were at the purchaser's

risk and had they been stolen or destroyed the loss would have fallen on the American Creosote Works, Inc., and not on the vendor, James P. Noble.

True, it is also stipulated in the contract that—

"It is specially agreed that under no circumstances is the inspection of this material, as indicating acceptance for payment, to be made at any other point than our creosote works. Acceptance of this material for purposes of transportation to the company's plant shall not be considered as a waiver of the company's right of inspection of material at the plant as herein provided."

But this provision was superseded, we think, by the one above quoted,

"Ramp inspection final by A. C. W. inspector."

The former is part of a regular printed form of contract, while the latter was written into the contract above the former at the time the contract was entered into. The two provisions are inconsistent and we can imagine no reason for specially writing into the contract—

"Ramp inspection final by A. C. W. inspector"—
unless it was intended to replace the other provision.

Aside from this the provision relied on by counsel for plaintiff, appellee was in the interest of the purchaser and could be waived and we think was waived by the inspection, acceptance and branding of the ties on the railroad 'Y' and payment of all of the price except enough to cover loading charges in case the seller failed to load them on cars.

Plaintiff, appellee, also contends that because the purchaser withheld 5 cents of the price of each tie to pay loading cost

that this also had the effect of preventing the property in the ties to pass from the vendor to the purchaser.

We are cited to no law and know of none making payment of price in full a condition precedent to a completed sale.

"Three things concur to the perfection of the contract, to-wit: the thing sold, the price and the consent."

Sales may be and often are made partly or even wholly on credit and yet the title to the things sold passes to the purchaser.

The evidence clearly shows that there had been a completed sale of the ties by James P. Noble to the American Creosote Works before they were seized by the plaintiff, appellee, and that whatever right the plaintiff, appellee, or his assignors had to assert a privilege thereon for labor performed in helping to make them was lost.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that there be judgment recognizing intervenor third opponent to be the owner of the twelve thousand one hundred ninety-seven (12,197) ties seized under the writ of provisional seizure herein and ordering the writ of provisional seizure dissolved and the ties to be restored to the possession of intervenor third opponent.

It is further ordered, adjudged and decreed that plaintiff, appellee, pay all costs of this suit.