No. 535

First Circuit

PUTNAM'S, INC., v. MOODY

(March 5, 1930.   Opinion and Decree.)
(April 14, 1930.   Rehearing Refused.)

George L. Fontenot, of Ville Platte, attorney for plaintiff, appellee.

Pugh, Grimmet & Boatner, of Shreveport, and Fred Simon, of Shreveport, attorneys for intervener-defendant, appellants.

LeBLANC, J.  J. A. Moody, the defendant, was engaged in the business of manufacturing cross-ties in the parish of Evangeline.  During the early part of 1928, while he was operating his business, he purchased supplies from the plaintiff, Putnam's, Incorporated.  The account was evidently running before January 4th of that year, as, on that date, the statement in the record shows an amount brought forward of $93.71, and it lasted until March

18th, on which day the defendant owed a balance of $168.28.

He had a contract with the Geo. W. Signor Tie Company, Limited, under which they bought the cross-ties from him, advancing him the sum of 50 cents per tie, and the balance became payable after inspection by the Railroad Company to which the Signor Tie Company sold them.

On July 26, 1928, after futile efforts to collect the balance due on their account, the plaintiff obtained an order of provisional seizure under which the sheriff seized a lot of cross-ties, some loaded in cars and others along the railroad track at Ville Platte Station in the parish of Evangeline.

The defendant apparently does not dispute the correctness of the account, having simply made an appearance to deny that plaintiff had a privilege on the cross-ties that were seized as the greater portion of its claim arose prior to the manufacture of those particular ties.

The Geo. W. Signor Tie Company, Limited, intervened, claiming the ownership of the ties and that they were in possession of same, and denied plaintiff's privilege on the same ground the defendant had denied it.

Plaintiff's privilege, if it has any, arises under Act No. 195 of 1912, which provides, under section 3 that "any person or persons furnishing supplies, provisions, or money, in deadening, felling, cutting, hauling, banking, driving, running, rafting or booming any log or timber, for the purpose of manufacturing telephone, telegraph poles, and cross ties, or any of them, or in manufacturing telephone, telegraph poles, or cross-ties, shall have a lien and privilege on same."

It will be noted that this law favors the furnisher of supplies with a lien and privilege throughout the whole extent of the operation of making the cross-ties, from the time the timber is deadened to that when it is a manufactured article.

Intervener's contention is that, if the plaintiff has any privilege at all, it is the one conferred by Act No. 23 of 1912, which has no effect against bona fide purchasers of the material on which it exists, without previous notice. That act, however, makes no reference whatever to furnishers of supplies, nor to cross-ties, and it can have no application to the present controversy.

The contention of the defendant and the intervener that there is no privilege because all the ties seized, with the exception of one hundred, had been manufactured in the months of March and April and most of the supplies had been furnished prior thereto, is not sound. In the first place, to force the claimant of the privilege to point out each cross-tie in the manufacture of which his supplies were used would place too narrow a construction on the act which grants him a privilege throughout the whole process of deadening, felling, rafting, etc., as well as through the process of manufacture. In the second place, an examination of the account filed in the record in this case shows that there was actually advanced during the months of March and April supplies to the amount of more than the balance which is here claimed.

Intervener's other contention, that the privilege, if any there was, had been lost because the ties on which it may have attached had become so mingled with other ties as to have lost their identity, is equally unsound. All the ties seized had been

manufactured by the defendant. There were no ties belonging to any one else with which they might have become so mixed as to make identification impossible. The authority cited, H. & C. Newman vs. Cannon, 43 La. Ann. 712, 9 So. 439, 440, is not in point. In that case, the unsuccessful creditors who claimed the vendor's privilege, were "jobbers in dry goods, dealing in goods not manufactured by themselves or dealt in exclusively by them." The merchandise of each had been unpacked and so mixed with that of others that they could not be identified with reasonable certainty. It will be observed, then, that the privilege claimed was not the same, and the state of facts is entirely different from that in this case.

The last contention is that the privilege had been lost because the ownership had passed from the defendant and the ties now belonged to the intervener. That question is one the determination of which must rest on the facts in the case. It is shown that the cross-ties were sold subject to inspection by and approval of the railroad company. A certain percentage was retained by the Signor Tie Company until inspection had been made. The evidence on this point is not satisfactory. Surely it is not as certain as was that in the case of Francis vs. Noble, American Creosote Works, Intervener, 8 La. App. 697, so confidently relied on by the intervener here, wherein the court held there had been a final inspection. The evidence on this point in the case before us was not sufficient to convince the trial judge, and, as it is a question of fact in which we find no manifest error in his finding, it will be sustained.

The judgment appealed from is affirmed.

LECHE, J., not participating.